[No. 20621. Department Two. June 22, 1927.]

LEONARD BROOKS, *Respondent,* v. O. T. HERD, *Appellant.*[1]

[1] PHYSICIANS AND SURGEONS (8) — CONTRACT OF EMPLOYMENT — LIABILITY. A drugless healer may contract specially to cure a patient and is liable on his contract for failure.

[2] SAME (12). In an action for malpractice, it is not error to instruct that, on the employment of a drugless healer, the relationship of healer and patient continues until his services are *no longer needed,* when considered with other instructions as to the termination of the relation and that the duty of the patient was to follow the advice given, and that he could not recover if his failure to do so was the cause of the aggravation of the ailment.

[3] SAME (12). In an action for malpractice, it is not error to refuse a requested instruction to the effect that there could be no recovery if the plaintiff failed to return for further treatment before he was cured, where there was nothing in the request as to the patient's absenting himself without cause, or whether a reasonable time for effecting a cure had elapsed.

[4] SAME (12). In an action for malpractice it is error to instruct that there can be recovery for "mental suffering" in the absence of any allegation or proof thereof.

[5] WITNESSES (88)—CROSS-EXAMINATION—REDIRECT—SCOPE. A collateral issue, brought out on cross-examination, may be gone into on redirect examination.

[6] PHYSICIANS AND SURGEONS (10½)—EVIDENCE — ADMISSIBILITY— OTHER INSTANCES. In an action for malpractice, neither party is entitled to show skill and care or lack thereof, by evidence of other cases or instances treated by the defendant.

Appeal from a judgment of the superior court for Pierce county, Teats, J., entered July 14, 1926, upon the verdict of a jury rendered in favor of the plaintiff in an action for malpractice. Reversed.

*James W. Anderson* and *Hayden, Langhorne & Metzger,* for appellant.

*A. G. Laffin* and *Homer T. Bone,* for respondent.

[1]Reported in 257 Pac. 238.

Holcomb, J.—This is an action by respondent to recover from appellant, a drugless healer, damages for his reckless and negligent treatment of a venereal disease with which respondent was then suffering. Appellant was employed about September 13, 1924, upon. what respondent alleged in his complaint and testified at the trial was a contract to cure respondent for the agreed price of sixty or seventy dollars. Appellant treated respondent from the date of the employment until about January 28, 1925, when, according to the allegation and testimony of respondent, appellant pronounced respondent cured and discharged him.

Appellant was licensed to practice what is known as "mechano-theraphy" and forbidden by the statutes relating thereto to use or recommend pharmaceutic drugs or poisons of any kind or nature for internal use, and by his own statement knew that his right to practice was so limited.

The law relating thereto is found in §§ 10112 to 10125, inclusive, Rem. Comp. Stat. [P. C. §§ 2077-1 to 2077-17]. Section 10114, supra, provides for the form of certificate to be issued to such practitioners, and also provides that practitioners thereunder shall confine their practice to the subjects or systems represented by their certificate, each school of drugless healing to be confined to its own method of healing; and § 10123, supra, again forbids prescribing or recommending pharmaceutic drugs or poisons for internal use by any such drugless healer.

The complaint alleged, and the testimony of respondent was to the effect, that appellant did use pharmaceutic drugs, some of which were poisonous in their effect, and produced evidence to show that the pharmaceutic drugs so used were injurious to the human system and had no curative properties for the disease

with which respondent was suffering, namely, gonorrhoea.

Respondent alleged that appellant did not use proper care or skill, and wrongfully, unlawfully and unskillfully administered drugs which were taken internally, under the direction of appellant, and which were ineffective and improper and without curative properties to cure the disease of which respondent was suffering; and that, after treating respondent for a period of about four months, on January 28, 1925, pronounced respondent cured and discharged him as cured; whereas, in fact, at the time of his discharge at the hands of appellant, respondent was not cured, but during the treatment given him by appellant, respondent's disease had become aggravated and had been permitted to progress into advanced stages, which was unknown to respondent; that by reason thereof respondent was injured in his health and constitution, suffered and is suffering great pain, was and is weakened in body, and was obliged to and did expend and will continue to expend large sums of money in endeavoring to cure the disease, which was and will be for a long time increased by the unskillful and improper treatment and the conduct of appellant, to his damage in the sum of $2,500.

By answer, appellant admitted entering into the employment alleged, but put in issue the nature of the contract, the allegations of negligence and unskillfulness, and the allegations of damages to respondent; and affirmatively alleged that respondent refused to obey directions given by appellant, in that, contrary to such directions to live in a plain and frugal manner and refrain from drinking alcoholic stimulants, or exposing his body to the elements or engaging in outdoor work, he disobeyed all such instructions, and that, if there were any ill effects suffered by respondent, they

were the result of the disease from which he was suffering and of his own wilful disobedience to instructions, and not due to any lack of care, skill or attention, on the part of appellant.

These allegations were also put in issue by the reply of respondent.

Of the five errors claimed by appellant, it will only be necessary to particularly discuss three.

[1] In general, the court submitted the case to the jury upon perfectly proper instructions as to the law governing the relations of physicians and patients. Under the statutes above cited, drugless healers are strictly limited, each to his own school of practice, and forbidden to invade the field of practice of any other school of drugless healing or of any regular school of healing. Otherwise, the principles of law governing the relations of regular physicians and surgeons and their patients govern as to drugless healers and their patients. *Wilcox v. Carroll*, 127 Wash. 1, 219 Pac. 34. The court in general gave the same instructions in this case as should be given in an ordinary malpractice case by a patient against a practitioner of a regular school of healing, for negligent care and treatment. The law is well settled that a physician may contract specially to cure and is liable on his contract for failure. 30 Cyc. 1573; 21 R. C. L. 391. Whether that was the contract, was a question of fact in this case.

[2] One error claimed by appellant is in giving the following portion of an instruction:

"When the drugless healer takes charge of a case and is employed to attend a patient, his employment, as well as the relationship between said healer and patient, continues until his services are no longer needed."

It is asserted that the plain meaning of that instruction is that once the relationship is established, it con-

tinues until such time, perhaps for years, as the patient no longer needs the attention or services of the physician, or, in other words, until the patient is cured, and ignores the patent fact that the relationship can be terminated by mutual consent or by the conduct of the patient in refusing or neglecting to take such treatment as the physician may prescribe or to take any treatment.

We deem the construction given the instruction by appellant somewhat hypercritical. The instruction, of course, in itself is not very complete. Another instruction was given, however, to the effect that when a patient goes to a physician and accepts the professional skill of such physician, it is the duty of the patient to follow the advice of the physician, and if he fails to follow the advice of the physician and something untoward happens to the patient which would not have happened or was not the physician's negligence, then the physician would not be liable; and if the plaintiff failed to follow the advice of the doctor and thereby aggravated the ailment, the jury should find for the defendant.

These instructions, taken as a whole, correctly state the law as to the respective duties of physician and patient toward each other.

The court also further instructed the jury, as would be proper in a case involving a regular school of medicine, that part of the correct treatment of a case is the careful and proper determination by the drugless healer or physician as to when the relation of physician and patient shall end, and that the relation continues until the services are no longer needed. It was further stated that the unwarranted abandonment of the case at a critical period by the drugless healer, or his discharge of the patient as cured when not cured,

resulting in increased pain and suffering on the part of the patient, would render the drugless healer liable.

[3] An instruction requested by appellant in accordance with the issue presented by his pleading, to the effect that if, while appellant was treating respondent and before he pronounced respondent cured, respondent failed, neglected and refused to return to appellant for further and additional treatment, but absented himself from appellant and did not return for further treatment, the jury should find for appellant, was incorrect in law. While it would have been appropriate under the issues in this case for the court to have given some instruction along that line, the instruction requested did not include the idea that the absenting of himself from appellant for treatment was without cause or reason and whether a reasonable time (in the absence of an agreed time, as in this case) had elapsed in which to effect a cure, and that it would be for the jury to determine under the issues and facts whether the cause of the failure to cure respondent, if there was such failure, was due to such willful absence from treatment or to some other cause. It was not incumbent upon the trial court to give a requested instruction which was not good in law.

[4] Another instruction complained of by appellant was that respondent could recover for mental suffering. We are at a loss to understand on what theory the jury were so instructed. There was no allegation or proof of any mental suffering. The allegations were all of physical injury by reason of unskillful treatment.

To support that instruction, respondent relies upon 8 R. C. L. 531, which states:

"In cases of wilful and wanton wrongs and those committed with malice and an intention to cause mental distress, damages are, as a general rule, recoverable for mental suffering even without bodily injury, and

though no pecuniary damage is alleged and proved. And in general, damages for mental anguish or suffering are recoverable where the act complained of was done with such gross negligence or recklessness as to show an utter indifference to the consequences when they must have been in the actor's mind; . . ."

*Gadbury v. Bleitz,* 133 Wash. 134, 233 Pac. 299, to the same effect, is also relied upon. Neither the text nor the *Gadbury* case can avail respondent here, where there was neither allegation nor proof to sustain it. At some time and in some way, before the case in chief for respondent ended, such issue should have been tendered and evidence in support of it introduced, under the rules of procedure prevailing in this state.

In this case there is no allegation of anything done by appellant to bring it within the rules and exceptions stated in the *Gadbury* case or the quotation from 8 R. C. L. 531, or 17 C. J. 831, quoted in the *Gadbury* case.

21 R. C. L. pp. 407-8, § 50, not cited by respondent, states the rule applying to actions for malpractice, part of which applies to such a case as this, and part of which, relating to exemplary damages, does not obtain in this state:

"Damages may be recovered for all injuries proximately resulting from the malpractice *charged* (italics ours), and in assessing the amount the jury should have the benefit of instructions pointing out definitely just what limits are to be observed. Ordinarily the measure of damages is the reasonable compensation for the bodily suffering of the patient and for the mental suffering accompanying and following same, . . . But where mental anguish has no other item of damage on which to fasten itself it cannot alone give cause for recovery."

Here, nothing was alleged or shown but physical injury. Upon such issues, no physician or surgeon ought to be held liable for mental suffering. How much the

jury allowed for this item, we cannot determine, and because it was submitted to the jury as an item of damage, we are obliged to reverse the judgment. *Corcoran v. Postal Telegraph-Cable Co.,* 80 Wash. 570, 142 Pac. 29, L. R. A. 1915B 522; *Kneass v. Cremation Society,* 103 Wash. 521, 175 Pac. 172, 10 A. L. R. 442; *Gadbury v. Bleitz, supra.*

[5] Another error complained of, worthy of reference but which will probably not recur at a re-trial of the case, was in permitting respondent to testify in re-direct examination that appellant also failed to cure his brother of the same disease.

It is true, appellant in a way invited the re-direct examination of respondent by having asked the following questions of respondent on cross-examination:

"Q. You took your own brother there—so well pleased, you took your own brother there for treatment? A. Yes, sir, that was the third day after I went there. Q. You took your own brother in there and he treated him, didn't he? A. Yes. Q. Treated him about the time he was treating you? A. Yes, didn't finish with him. He is in the same shape I am now."

The above answer, of course, was volunteered, and was not objected to by appellant or moved to be stricken. But on redirect, counsel for respondent asked him if the doctor cured his brother, to which respondent answered, "No, he did not." To that counsel for appellant objected and moved the court to strike the answer and instruct the jury to disregard it, which the court denied. Respondent contends that, under the rule as stated in *State v. Anderson,* 20 Wash. 193, 55 Pac. 39, and *Larsen v. Sedro-Woolley,* 49 Wash. 134, 94 Pac. 938, matters brought out on cross-examination of a witness may properly be gone into on re-direct examination, the ruling of the court was correct.

It was a collateral issue. *Chilberg v. Parsons,* 109 Wash. 90, 186 Pac. 272.

[6] But neither party was entitled to show the skill or lack of skill, care or lack of care, negligence or lack of negligence, on the part of the physician in other cases or instances. *Rossier v. Payne,* 125 Wash. 155, 215 Pac. 366, and cases therein cited.

Therefore, the objection and motion to strike made by appellant should have been sustained and granted. While we should probably not reverse the case for this cause alone, we consider it advisable to avoid such error in a re-trial.

For the reasons given herein, the judgment is reversed, and the cause remanded for a new trial.

MACKINTOSH, C. J., TOLMAN, ASKREN, and MAIN, JJ., concur.