[No. 33936.   *En Banc.*   February 27, 1958.]

JOHN K. CARPENTER *et al., Respondents, v.* KENNETH MOORE
*et al., Appellants.*[1]

[1]Reported in 322 P. (2d) 125.

*John D. MacGillivray* and *Willard W. Jones,* for appellants.

*Carl Maxey,* for respondents.

HILL, C.J.—■ QUAERE: What should be the recovery in an action by a patient against a dentist for the breach of a contract to make upper and lower partial plates to the patient's complete satisfaction; there being no proof of negligence or of any fault on the part of the dentist, except that he failed to satisfy his patient, and the only damages found by the trial court being seven hundred and fifty dollars for pain and suffering, and the four hundred dollars paid for the partial plates?

ANSWER: The amount of the consideration paid by the patient for the work, which the dentist had contracted to do to her satisfaction. This would exclude the damages for pain and suffering.

REASONS FOR THE ANSWER: The narrow limits of the breach of contract, with which we are concerned, must be kept in mind. Claimed breaches of a contract to do first-class, skillful, competent, and careful work were not established. Had the breach of contract involved any of the usual elements in a malpractice action, negligence, lack of skill, incompetence, or want of care, it might well be argued that the pain and suffering resulting therefrom were within the contemplation of the parties, as was the case in *Reeves v. Wilson* (1919), 105 Wash. 318, 177 Pac. 825. (This is not the unusual case where the unsatisfactory result is in itself some evidence of negligence, as in *Olson v. Weitz* (1950), 37 Wn. (2d) 70, 221 P. (2d) 537, and the cases therein cited.)

Purists may be concerned as to whether the breach with which we are here concerned is of a warranty or a guaranty. We shall follow the example of the parties and refer to

a guaranty or guaranties, which seems to be justified by common usage.

The trial court found that only one of the claimed guaranties had been breached, i.e., that the patient would be satisfied. If that guaranty had not been made to the patient, there could have been no recovery. (It should be noted that Dr. Moore denied making such a guaranty; however, the testimony of a patient or client that a guaranty was made is sufficient to take the question of the existence of such a contract to a jury, or to support a finding by a trial court.)

■ The general rule is that for a breach of contract the injured party should be allowed to recover any damages that might have been within the contemplation of the parties as a probable result of the breach. *Foss v. Pacific Tel. & Tel. Co.* (1946), 26 Wn. (2d) 92, 173 P. (2d) 144.

■ The amount paid, or promised to be paid, is the consideration for the promise of the professional man that the patient or client will be satisfied with his work. *Wilson v. Blair* (1922), 65 Mont. 155, 211 Pac. 289, 27 A. L. R. 1235. Having made such a promise, he must, in the event of a breach of the promise on his part, contemplate the loss of the consideration, and the patient or client is entitled to recover the amount paid for the services which are unsatisfactory. *Frankel v. Wolper* (1918), 181 App. Div. 485, 169 N. Y. S. 15. However, damages for pain and suffering, ordinarily predicated on negligence or malpractice, are not within the contemplation of the parties for the breach of a promise to do work to the satisfaction of a patient or client in the absence of some negligence or fault. *Frankel v. Wolper, supra.*

THE FACTS WHICH RAISE THE ISSUES: Unless otherwise indicated, our statement of the facts is taken from the findings made by the trial court. Many of these findings are challenged by the defendants as appellants in this court. They are made on sharply conflicting testimony, particularly with reference to the making of any guaranty; but we are unable

to say that the evidence preponderates against these findings.

The defendant, Dr. Kenneth Moore, a dentist, agreed to make partial upper and lower plates for the plaintiff, Mrs. John K. Carpenter, and he expressly guaranteed that all of the work would be done to her satisfaction. He expressly guaranteed that he would adjust any work done, or repair such work as might be necessary in the event any of the work should prove unsatisfactory or that was done in an unskillful, incompetent, or careless manner, or do over such work that might have been improperly performed. (There was no evidence of unskillful, incompetent, careless work, or improper performance.)

The making of these partial plates and other dental work—which involved cleaning the mouth of pyorrhea, the pulling of certain teeth, and the filling of others—was to be done at a cost of five hundred and seventeen dollars, of which four hundred dollars was to be the cost of the partial plates.

The upper and lower partial plates did not fit properly, were not properly adjusted, slipped about in the mouth of Mrs. Carpenter, and were painful and uncomfortable. She could not eat with them, and they provided no utility whatsoever to her. They caused growths to appear in the area of the left cheek that had to be removed by a surgeon; said growths having been caused by the constant biting of the cheek. The plates also caused discoloration and pigmentation.

The specific finding on which liability must be predicated is that Dr. Moore breached his contract with the Carpenters in failing to perform his work to the satisfaction of Mrs. Carpenter, and that her dissatisfaction was real and not feigned.

The finding on damages was that Mrs. Carpenter had experienced pain and suffering from the dentist's breach of guaranty of her satisfaction in the sum of seven hundred and fifty dollars and a special damage of four hundred dollars. It is from the judgment of one thousand one hundred

and fifty dollars, based on these findings, that Dr. Moore and his wife appeal.

CONTENTIONS OF THE APPELLANTS WHICH ARE FOUND TO BE WITHOUT MERIT, OR IF WITH MERIT, TO BE WITHOUT PREJUDICE:

■ It is urged that the plaintiffs should have been compelled to elect whether they were suing for damages for a tort or a breach of contract, and that the case should have been dismissed because no tort was established. The complaint and demand for the admission of facts do indicate that plaintiffs' claim for damages was predicated upon the incompetent, unskillful, and negligent performance of work by Dr. Moore.

The plaintiffs failed to prove negligence or malpractice, or any breach of the dentist's agreement to do careful, competent, and skillful work, but their evidence did establish an agreement to do satisfactory work for Mrs. Carpenter, and the breach thereof. The trial court announced at the conclusion of the plaintiffs' case that the pleadings were amended to conform to the proof.

The issues in this case might have been narrowed before trial, instead of at the close of the plaintiffs' case. Confusion could have been eliminated, and the time of trial materially shortened, by a pretrial conference; but we do not see that the defendants were in any way prejudiced, or denied any opportunity to meet what ultimately proved to be the decisive issues in the case, *i.e.*: Was there an agreement to do work satisfactory to Mrs. Carpenter, and was that agreement breached?

■ Complaint is made that an exhibit and certain testimony were excluded. Neither the exhibit nor the testimony had any bearing on the decisive issues, and hence there was no prejudice. *W. W. Kimball Co. v. Cockrell* (1900), 23 Wash. 529, 533, 63 Pac. 228.

The contention of the defendants that the determination of whether a party was satisfied should not be purely subjective or arbitrary, need not be considered, because there is a finding, and evidence in support thereof, that the dissatisfaction was real and not feigned.

DISPOSITION OF THE CASE: Judgment modified. Special damages in the amount of four hundred dollars are approved; and the item of seven hundred and fifty dollars for pain and suffering will be deleted from the judgment. A new judgment will be entered in the amount of four hundred dollars and costs in the superior court. Neither party will recover costs on this appeal.

MALLERY, OTT, and FOSTER, JJ., concur.

DONWORTH and WEAVER, JJ., concur in the result.

FINLEY, J. (concurring in part and dissenting in part)— In this day of substantially enlightened legal reforms, it has been said with considerable critical discernment by the British legal historian, Maitland, that the common-law forms of actions are dead, but that "they rule us from their graves."

Potentially, Maitland's thesis has a bearing on three questions presented in this case: (1) whether plaintiffs had to elect to sue and had to maintain their action strictly either as one *ex contractu* or as one *ex delicto*; (2) whether plaintiffs' evidence herein is such that it may be said that a good cause of action in contract was established; (3) whether damages for pain and suffering, normally a measure of damages applicable in actions which are characterized as *ex delicto,* may be applied under the facts herein in this action, which is characterized as *ex contractu.*

By holding that the cause of action is good, and by imposing legal liability sounding in contract in the instant case, the majority opinion laconically presents a modern answer to the first two questions. Avoided are atypical post-mortem influences wielded oftentimes unrealistically and unnecessarily by the old common-law forms of action or their vestigial remains. With this I agree; however, the voices from the grave are subtle. I fear and believe that the majority succumbs thereto in answering the third question: denying damages for pain and suffering. With this I disagree.

Article I, § 32, of our state constitution provides:

"A frequent recurrence to fundamental principles is essential to the security of individual right and the perpetuity of free government."

RCW 4.04.020 [cf. Code 1881, § 2; Rem. Rev. Stat., § 153], which, incidentally, is not a recent innovation, provides:

"Only one form of action—Civil action. There shall be in this state hereafter but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be called a civil action."

All will agree that the above constitutional provision should be heeded by the courts. In this connection, it also should be apparent that our courts exist fundamentally to provide the means for settling disputes *fairly* and *justly,* as well as in an *orderly* and *formal* manner; otherwise, after several centuries, there is little improvement over the ancient forms, such as trial by battle or by ordeal of fire or water. The ancient forms certainly offered the means of settling disputes, but was there sufficient emphasis upon *justice,* as we are wont to contemplate the meaning of that term today?

The above-quoted statutory and constitutional provisions certainly suggest annihilation of the old common-law forms of action and banishment of the hobgoblins of technicality which they spawned.

I believe the questions presented in the case at bar are quite important. Because of this, I feel compelled to comment at some length regarding several aspects of the present case.

At this point, it seems appropriate to summarize as follows: This is a lawsuit to collect damages allegedly arising out of the breach of an oral contract to make and to fit dentures to the satisfaction of the plaintiff wife. Specifically, plaintiffs seek to recover (1) for the pain and suffering of the plaintiff wife resulting from improper construction and fitting of upper and lower partial dental plates; and (2) for the charges paid by plaintiffs for the dental plates and the dentist's services. The case was tried to the court without

a jury. The plaintiffs obtained a judgment for damages totaling $1,150; $750 was allocated for pain and suffering, and $400 represented the price paid for the dental plates and the dentist's services. This appeal followed.

The contentions of appellant-dentist are, in essence: (1) That respondents alleged a cause of action in tort (malpractice) rather than one for breach of contract; (2) that the proof presented by respondents was not such as to convert the action into one of contract; (3) that respondents' remedy and rights, if any, are *ex delicto*; (4) that respondents failed to produce proof (a) to show the standards of dental practice prevailing in their community, and (b) to show that the professional services of appellant did not meet the prevailing standards; and, consequently, that respondents failed to prove negligence or malpractice. Lastly, appellants contend that damages for pain and suffering cannot be allowed in the instant case, because (a) no tort has been proved, and (b) the element of pain and suffering is not a proper measure for damages in actions for breach of contract.

The appellant, in contending that the case at bar is an action in tort and not one in contract, relies upon *Yeager v. Dunnavan* (1946), 26 Wn. (2d) 559, 174 P. (2d) 755.

In the *Yeager* case, the contract undertaken by the doctor may not have been a wise one; but it was very broad in scope. It obligated the doctor to perform an operation to correct a child's eyesight "without injury to the health or eyesight and without danger to her life." The child died on the operating table because of an allergic reaction of the thymus gland to ether. The parents brought suit against the doctor for damages.[2]

---

[2] In the *Yeager* case (*Yeager v. Dunnavan*, 26 Wn. (2d) 559, 174 P. (2d) 755), the complaint alleged (a) negligence, and (b) a breach of contract. The court held that there was no proof as to negligence and flatly refused to recognize any liability based upon principles of contract law, citing *Compton v. Evans*, 200 Wash. 125, 93 P. (2d) 341, as authority.

Actually, there seems to be very little analogy between *Yeager* and *Compton*. In *Compton* the plaintiff, a domestic servant of the defendant, was injured while being transported in the family automobile driven

The court's decision in the *Yeager* case completely disregarded allegations relative to contractual obligations and considered the latter merely as matters of inducement, supposedly showing the relationship of the parties as a basis of tort liability. It seems to me that the court indulged in a drastic and unjustified legal fiction, thereby begging the basic question of legal liability and at the same time

by defendant wife. The latter died as a result of the accident. The defendant husband died before trial. When *Compton* was decided, the common-law principle—that tort liability ceases upon the death of the tort feasor—had not been abrogated in this state by statute. The plaintiff attempted to frame her cause of action in contract, alleging a contract (a) to provide her with safe and adequate transportation, and (b) to exercise due and reasonable skill and care in connection therewith. The trial court sustained a demurrer to the complaint on the ground that the action pleaded by the plaintiff was one in tort, and that the tort did not survive the death of the tort feasors. On appeal, the alleged contract was strictly construed as one for transportation, and not involving an express contractual provision for safe transportation. The court ignored the plaintiff's allegation that the contract called for the exercise of due and reasonable skill and care in furnishing the transportation. The trial court's order sustaining the demurrer and dismissing the action was affirmed, the court stating that it *would not read into the contract the duty implied by law to exercise due care*, and then uphold and enforce the contract for violation of such a duty.

There is considerable doubt in my mind as to the correctness of the *Compton* decision. It was before the court on a demurrer testing the sufficiency of the plaintiff's complaint. The complaint alleged a contract for transportation; furthermore, that the transportation would be provided with due and reasonable skill and care. In view of modern, liberal rules as to pleading, the complaint inferred or directly alleged that the defendant would *exercise due and reasonable skill and care* in providing transportation for plaintiff. Thus construed, the complaint adequately stated a cause of action which suggested legal liability based upon contract principles. Whether the plaintiff would have been able to have established contract liability by adequate and proper proof is an entirely different question which was not or at least should not have been passed upon by the court in disposing of the demurrer attacking the adequacy of the complaint. However, assuming that the decision in the *Compton* case was correct, and taking it for what it is worth, it still does not support the decision reached by the court in *Yeager*. The decision in the *Yeager* case questions *Schuster v. Sutherland* (1916), 92 Wash. 135, 158 Pac. 730, where liability was based in part upon the contract theory. I believe that the contract in the *Schuster* case was one to produce a certain result: *i.e.*, removal of *all gallstones*; that failure to remove one sizable stone constituted a breach of contract; and that recovery was properly based, in part, upon the breach.

ignoring the clear mandate of RCW 4.04.020, quoted hereinbefore.

The majority opinion in the instant case does not mention the *Yeager* decision. However, if the *Yeager* case is not in effect overruled, at least its authority is greatly diminished by the decision in the case at bar. Based upon my analysis of the decision in *Yeager*, I am convinced (a) that it was wrongly decided, (b) that it should not be relied upon to support appellants' contention in the instant case, (c) that it is time to specifically overrule the decision, and (d) that it is time to put into proper focus cases like *Yeager* and the instant case involving *special contracts* by medical practitioners to cure or to obtain specific results. The latter can and should be accomplished very simply. The key is to keep in mind and to properly emphasize RCW 4.04.020, which abolishes technical common-law distinctions relative to contract and tort. *Bill v. Gattavara,* 34 Wn. (2d) 645, 209 P. (2d) 457.

At page 261 in Clark on Code Pleading (2d. ed., Hornbook Series), it is said:

"If the plaintiff is to be expected to state only the past occurrences between the parties, and the court is then to grant him such relief as those occurrences justify, it should be immaterial that he called his action one of tort, whereas the court thought it was one of contract, or one in 'equity,' whereas the court thought it one 'at law.' This has been ruled many times by able courts. So far as the plaintiff's theory involves a particular set of facts, he is bound by those he alleged. Yet, . . . he should be allowed sufficient leeway in alleging the facts generally, so that he may protect himself against the minor variations in the witnesses' stories which may develop at the trial. With freer permission given by the more liberal modern code rules to set forth the facts in alternate form, he can properly be held to prove the material facts he has chosen to allege. Therefore he should not be forced to fulfill any requirement of having and maintaining a single legal theory of his pleadings; he should be held only to the ideal of reasonably fair notice of the facts of his case."

In *Brown v. Baldwin* (1907), 46 Wash. 106, 89 Pac. 483, this court said:

"An applicant for justice is not to be turned out of the temple of justice scourged with costs because he happens to come in at one door instead of another."

Accordingly, respondents did not have to elect between tort and contract in their pleadings. The only election they had to make was a practicable one, during the course of the trial, dependent upon the availability of proof and the necessity of presenting proof to support some ground or grounds of legal liability in order to prevail in the lawsuit.[3]

---

[3]Appellant moved in the trial court at the close of respondents' case to require respondents to elect between an action in contract and one in tort. A colloquy occurred as follows:

"MR. MacGILLIVRAY: Your Honor, that is the purpose of my motion to elect, it is a question of the proof. Is the proof here now, in your Honor's opinion, sufficient to sustain an action on the basis of negligence, of the breach of duty implied by law on the part of the defendant Dr. Moore here? *Is it your Honor's position that the evidence is sufficient to require the defendant to go ahead and produce evidence on the basis of the alleged contract of guarantee?* THE COURT: It would be the latter, as the view of the Court now. In other words, Mr. MacGillivray, council for plaintiff has already elected by his proof, now that he has rested his case, *he has already elected by his proof, to proceed, or that he has proceeded upon the theory of breach of guarantee contract, express guarantee contract,* so that a motion to require him to elect is determined by the proof that he has made. That is the position that he has taken, and *there is no proof before the Court at the present time as to a breach of an implied contract based upon negligence* [malpractice]." (Italics mine.)

Subsequently, the respondents moved to amend the complaint, reopened their case, and introduced evidence to support the claim for damages based upon breach of contract. Appellant objected to evidence offered as to the cost of the upper and lower partial plates, and the following colloquy occurred:

"MR. MAXEY: I have just made a trial amendment. MR. MacGILLIVRAY: We came to court in this case on the allegation that something was wrong, certain damages were alleged. There is no complaint that there was anything wrong with the lower plate, and no damages are sought for the construction of the lower plate. THE COURT: That may be true so far as the pleadings are concerned, *but the pleadings were amended to conform to the proof. The objection is overruled.*" (Italics mine.)

The trial court (relying on *Reeves v. Wilson,* 105 Wash. 318, 177 Pac. 825) stated that malpractice could arise in two ways: (1) It could arise out of negligence on the part of the dentist, constituting a breach of the dentist's implied duty to properly perform; (2) it could arise out of breach of a contract in the nature of a guarantee; and, finally, that, in either case, damages could be recovered for pain and suffering.

Now, with regard to contracts for a specific result entered into by doctors and dentists, the general rule is as follows:

"A physician or surgeon may bind himself by express contract to perform a cure or obtain specific results by treatment or an operation. . . . A practitioner of dentistry may by contract, independent of any question of negligence, be held chargeable, virtually or actually, as an insurer or guarantor of the results." 41 Am. Jur. 220, § 105.[4]

In *Brooks v. Herd,* 144 Wash. 173, 257 Pac. 238, the jury returned a verdict against the defendant, a drugless healer, in an action based upon both malpractice and breach of contract. After concluding that with certain qualifications the

It may be that the trial judge ineptly "labeled" breach of contract as malpractice, or vice versa; nevertheless, he stated that: (1) there was no proof of a breach of a legal duty implied by law (tort or malpractice, as the latter term is generally understood); (2) the pleadings as amended to conform to the proof supported an action for breach of contract; and lastly, (3) the trial judge specifically ruled that negligence was not an issue in this case.

At the hearing on the proposed findings of fact, the following colloquy occurred:

"Mr. MacGillivray: Is your Honor now making a finding that the dental work was done in a careless and negligent manner? The Court: No, I am not up to that yet. [Thereupon, reading from Finding of Fact No. VIII] 'and in performing the contract in a careless and negligent manner.' I don't think there should be a finding of negligence, although you have set forth in paragraph 4 that he had guaranteed to do the work in a careful manner, 'in a skillful, competent, and careful manner.' *I don't think we should mingle any element of negligence in this case with the guarantee.*" (Italics mine.)

Thereupon, the reference to negligence was stricken from Finding of Fact No. VIII, which reads as follows:

"That the defendant, Kenneth Moore, *breached the contract* entered into between himself and the plaintiff herein in not having performed the work to the satisfaction of the plaintiff; that the dissatisfaction of the plaintiff, Mrs. John K. Carpenter, *is real and not feigned.*" (Italics mine.)

[4]See, also, 70 C. J. S. 942, 943, 954, §§ 37, 38, 47; *Brooks v. Herd,* 144 Wash. 173, 257 Pac. 238; *Harvey v. Richardson,* 91 Wash. 245, 157 Pac. 674, Ann. Cas. 1918 A 881; *McTyeire v. McGaughy,* 222 Ala. 100, 130 So. 784; *Funk v. Bonham,* 204 Ind. 170, 183 N. E. 312; *Wilson v. Blair,* 65 Mont. 155, 211 Pac. 289, 27 A. L. R. 1235; *Hood v. Moffett,* 109 Miss. 757, 69 So. 664; *McQuaid v. Michou,* 85 N. H. 299, 157 Atl. 881; *Frank v. Maliniak,* 249 N. Y. S. 514, 232 App. Div. 278; *Keating v. Perkins,* 293 N. Y. S. 197, 250 App. Div. 9; *Colvin v. Smith,* 92 N. Y. S. (2d) 794, 276 App. Div. 9; *Robins v. Finestone,* 308 N. Y. 543, 127 N. E. (2d) 330; Annotation in 27 A. L .R. starting at page 1250, citing cases from 31 jurisdictions.

rules relative to medical doctors and their patients apply to drugless healers and their patients, we stated:

"The law is well settled that a physician may contract specially to cure and is liable on his contract for failure. 30 Cyc. 1573; 21 R. C. L. 391."

This rule is applicable to dentists. *Hill v. Parker* (1942), 12 Wn. (2d) 517, 122 P. (2d) 476.[5]

In the case at bar, the contract is one of guarantee or a contract for a specific result; *i.e.*, to perform services to the satisfaction of the plaintiff. It squarely falls within the above-mentioned rule relative to *special contracts*.

The question of damages remains for discussion.

The majority affirm the judgment of four hundred dollars, representing the price paid for the dentures and the dentist's services, and I concur in this action.

The majority disapprove the damages for pain and suffering in the sum of seven hundred fifty dollars and modify the trial court's judgment accordingly. With this I disagree.

---

[5] In *Giambozi v. Peters*, 127 Conn. 380, 16 A. (2d) 833, the defendant doctor contracted to cure, but death resulted from subsequent treatment. The court held that when death occurred there was a breach of the contract, and that an action, *ex contractu*, was proper. Allegations of negligence and evidence relative to care and skill were held immaterial. See, also, *Robins v. Finestone*, 308 N. Y. 543, 127 N. E. (2d) 330, where the court of appeals of New York held that allegations that the services were "unworkmanlike" and "unskillful" did not serve to label the complaint as one stating a cause in malpractice only, and, among other things, said:

"When the complaint is read in its entirety, the conclusion is inescapable that a cause of action for breach of contract is stated. *While it may be unusual for a physician to enter into a special contract to cure rather than to undertake only to render his best judgment and skill, since the practice of medicine is not an exact science, it cannot be doubted that there are occasions when such contracts are made* (see *Colvin v. Smith*, 276 App. Div. 9, 10; *Safian v. Aetna Life Ins. Co.*, 260 App. Div. 765, affd. 286 N. Y. 649). As was recently indicated, a doctor and his patient are at liberty to contract for a particular result and, if that result be not attained, a cause of action for breach of contract results which is entirely separate from one for malpractice although both may arise from the same transaction. (*Colvin v. Smith*, 276 App. Div. 9, 10, *supra*, and cases therein cited.)" (Italics mine.)

The general rule of damages in actions for breach of contract needs no citation of authority. Recovery may be had for all resulting damages which were reasonably within the contemplation of the parties at the time of the execution of the contract.

I do not think the majority opinion explains or comments satisfactorily upon the finding of the trial court which states:

"VI. That both the upper and lower partial plates prepared and installed by the defendant for the plaintiff were unsatisfactory to the plaintiff; *that both the upper and lower plates do not fit properly, and are not properly adjusted to the mouth of the plaintiff*; that both the upper and lower partial plates slip about in the mouth of the plaintiff; that both partial plates are painful and uncomfortable; *that the plaintiff since the date of installation, to wit, May, 1954, cannot eat with them; that the plates have caused growths to appear in the area of the left cheek that had to [be] removed by a physician and surgeon, said growths caused by the constant biting of the cheek; that the plates have caused discoloration and pigmentation* as a result of the constant biting of the cheek on the right side; that the plates have provided no utility whatsoever to the plaintiff, Mrs. John K. Carpenter." (Italics mine.)

The plates may have been structurally sound—and even works of art, as far as dental plates go—worthy of exhibit in a dental museum; but, according to the above finding, which is supported by the record, the fact remains (a) that they did not fit Mrs. Carpenter's mouth, and (b) that they caused her pain and suffering and physical disfigurement and injury.

Despite the above-quoted finding of fact and the obvious inferences which must be drawn therefrom, the majority opinion states that

"This is not the unusual case where the unsatisfactory result is in itself some evidence of negligence, as in *Olson v. Weitz* (1950), 37 Wn. (2d) 70, 221 P. (2d) 537, and the cases therein cited."

The actual damage to the plaintiffs in the instant case is the same whether the cause of action be characterized as

one sounding in tort or contract. To make the amount of Mrs. Carpenter's recovery differ, depending on characterization of her action as tort or contract, is simply to pay homage to the ghost of the common-law forms of action and thereby allow them to "rule us from their graves."

In *Frank v. Maliniak* (1931), 249 N. Y. S. 514, 232 App. Div. 278, where an operation was performed in a manner different from that expressly agreed to, damages for pain and disfigurement were held to be recoverable. Damages for pain and suffering were allowed in *Hood v. Moffett* (1915), 109 Miss. 757, 69 So. 664, where the doctor breached his contract to treat his patient. See, also, *Klein v. Williams*, 194 Miss. 699, 12 So. (2d) 421; *McQuaid v. Michou,* 85 N. H. 299, 157 Atl. 881.

In the ordinary contract situation, only pecuniary benefits are contemplated by the parties; therefore, the damages resulting from the breach of the contract are measured by pecuniary standards. But when the parties contract for other than pecuniary benefits, other than pecuniary standards will be applied to ascertain the damages flowing from the breach. See 1 Sutherland's Law of Damages (4th ed.) 328, § 92.

In the instant case, the parties did not contemplate pecuniary benefits to Mrs. Carpenter; they contemplated and bargained *specially* for dental plates which would fit her mouth in such a manner as to allow full utility of the teeth, without pain, suffering or disfigurement to her.

I am convinced that the better-reasoned rule of law would be that, in an action in which a dentist *has guaranteed to make and fit dentures to the satisfaction of a patient,* but has not done so, and the patient has been, in fact, damaged by physical pain, suffering, and disfigurement, the dentist should be liable for those consequences flowing naturally and inevitably from the breach of the contract. In the instant case, I think that pain and suffering, and disfigurement, were (or should have been) fairly subject to the contemplation of the parties when the contract was made. See *Frank v. Maliniak, supra; Hood v. Moffett, supra.*

The appellant-dentist made an extreme if not improvident contract. In effect, he is asking this court to rewrite it, and, to a certain extent, the majority opinion does so. I agree with the trial court's finding—allowing recovery for pain, suffering and disfigurement as an element of the damages in this case. I believe that respondents proved the fact of damage or injury—pain, suffering and disfigurement. It was for the trial court to evaluate the evidence and to establish in terms of dollars and cents the amount of damages. I would affirm the judgment of the trial court in its entirety.

ROSELLINI, J., concurs in the conclusions reached by FINLEY, J.

